WILLIAM W. MEAD AND JULIA A. CARROLL, EXECUTORS, ESTATE OF MARTHA A. WATSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7228.   Promulgated April 7, 1927.

> Executors' fees, paid out of income of the estate and allowed by the probate court having jurisdiction, for services in maintaining and protecting the property of the estate over a long period of years, rendering other services in connection therewith in selling the property, collecting deferred payments and making investments, are deductible as expenses by the estate in determining its net income.

*Joseph Kirwin, Esq.*, for the petitioners.
*J. E. Marshall, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies in income taxes for 1920, 1921, and 1923, in the amounts of $597.15, $1,355.06, and $3,029.36, respectively. The deficiencies arise from the action of the Commissioner in disallowing as deductions executors' fees and commissions in determining the net income of the estate.

## FINDINGS OF FACT.

William W. Mead and Julia A. Carroll are the executor and executrix of the last will and testament of Martha A. Watson, deceased. The decedent died testate on June 15, 1915. At the time of her death she was a resident of Michigan. Her will was probated by the Probate Court of Kent County, Michigan, on July 27, 1915. Letters testamentary were issued to the above named executor and executrix.

The estate of the decedent consisted almost entirely of a tract of pine timberland containing 12,520 acres, in Greene County, Miss. The land was uninclosed and was surrounded by farms. At the time of decedent's death the land was not accessible to market. It was several miles from a railroad and transportation facilities were poor. After decedent's death a spur track was built into the tract of land. The executor and executrix rendered aid in the procurement of the extension of the railroad to the timber.

After the building of the railroad into the timber sales were made, the first sale of substantially half thereof being made in November, 1919, at the price of $656,500. On April 13, 1923, the remaining half was sold for $680,000. The sales were made upon contracts. A cash payment was made in each instance and the balance of the purchase price was to be paid over a series of years. The vendee under the contracts could cut the timber only as he paid for each subdivision unless bonds were put up as security for the payments before they became due.

The executor and executrix rendered service in preserving and protecting the timber, procuring estimates in advance of making sales by determining the amount and value of the timber. They had abstracts prepared and titles checked and perfected where they were defective. They protected the property from trespasses. They collected the interest on the contracts and saw that timber was not cut or removed before payments were made on the different subdivisions. When interest was collected or payments made on the contracts, the amounts were invested by the executor and executrix according to the terms of the will of the decedent in income-paying properties. They also paid the taxes and interviewed the state and county assessing authorities for the purpose of seeing that the property was not overassessed and that proper values were put upon the timber. The executor went down personally and looked over

the land several times each year to see that the person who was employed to prevent trespasses was performing his duties. Considerable trespasses had been committed on the timber and the executor and executrix prosecuted the individuals who committed the offenses. They saw to it that the contracts relating to the sales of the timber were performed and carried out by the vendees. The executor and executrix kept the principal of the estate intact and have paid the expenses for the care, protection and management out of income. During the years 1920, 1921, 1922, and 1923 all of the timber was still standing.

The decedent, at the time of making her will, talked of making a provision therein for an annual salary for the executor and executrix but she did not know what the land would produce when sold or the amount of services that would be required and determined to leave the matter of compensation to the court to fix.

Paragraph 5 of the will contains the following provision:

Inasmuch as my property consists almost entirely of unproductive real estate, it is my will that such real estate hereby devised and bequeathed to said Trustees, shall not be forced to sale or sacrificed for the purpose of converting said trust estate hereby created into income paying property, but that it shall only be disposed of when sales can be made on advantageous terms of which said Trustees shall be the sole judges.

Direction is also given in said paragraph to pay all necessary expenses for the care, protection and management of said estate as the decedent herself might do if she were alive and to pay one-third of the net income to Marion Mead, daughter of an adopted son, during her life, with remainder to her children, if any, or if she should die without issue, the remainder to Julia A. Carroll and William W. Mead, or the survivor of them.

An equal undivided one-third of the residue of the estate was bequeathed to Julia A. Carroll and William W. Mead each. Marion Mead was a child of eleven years of age at the time of the execution of the will on August 19, 1902, and was 23 years of age at the time of the death of decedent on June 14, 1915.

The fifth paragraph of the will also provides as follows:

Said Trustees shall take possession of, manage and control the same, and receive the income, rents and profits thereof, and they are hereby authorized and empowered to sell and convey all of said trust estate as I might do if alive, using and expending for that purpose so much of either the income or principal of said trust estate as may be necessary. Inasmuch as my property consists almost entirely of unproductive real estate, it is my will that such real estate hereby devised and bequeathed to said Trustees, shall not be forced to sale or sacrificed for the purpose of converting said trust estate hereby created into income paying property, but that it shall only be disposed of when sales can be made on advantageous terms, of which said Trustees shall be the sole judges, during the minority of Marion Mead, hereinafter mentioned; and further, it is my will that during her said minority the judgment of said

Trustees respecting such sales shall not be controlled or directed by any person, court or official whatsoever. Said Trustees may make such sales on such credit and security for deferred payments as they may deem proper. I direct said Trustees to invest all of said trust estate, including the proceeds of all real estate sold, in such interest bearing or dividend paying securities as they shall think proper, and to receive the income thereof, and I empower and authorize them to change, shift and vary such investments, from time to time, to others of a like nature at their discretion. After paying all the necessary expenses for the care, protection and management of said trust estate, I will and direct said Trustees to pay the net income thereof to said Marion Mead, the daughter of my adopted son James A. Mead, deceased, for and during her natural life. From and after the death of said Marion Mead, I give, devise and bequeath all of the said trust estate in equal shares to her children and to the issue of any deceased child or children by right of representation.

The estate is still in the hands of the executor and executrix in the process of administration.

The fees and commissions allowed executors and other representatives of estates of deceased persons are regulated and determined by statute in the State of Michigan. In the care, protection and management of the estate the executor and executrix performed services not ordinarily required of an executor, which services required considerable time and were of material benefit to the estate.

The probate court of Kent County, Michigan, in allowing the annual accounts of the executor and executrix for the years 1920, 1921, 1922, and 1923, took into consideration such services so rendered and allowed them compensation therefor as provided by statute, in the following amounts:

| Year. | Statutory fees. | Extra compensation. | Total. |
| --- | --- | --- | --- |
| 1920 | $1, 389. 42 | $5, 000. 00 | $6, 389. 42 |
| 1921 | 1, 507. 00 | 5, 000. 00 | 6, 507. 00 |
| 1922 | 1, 226. 00 | 5, 000. 00 | 6, 226. 00 |
| 1923 | 2, 061. 48 | 5, 000. 00 | 7, 061. 48 |
| Total | | | 26, 183. 90 |

The above amounts were paid out of the income of the estate and not out of the corpus, in accordance with the petitioner's interpretation of the provisions of the will. The executor and executrix, in compliance with section 219 of the Revenue Act of 1918, filed income-tax returns for the estate for the years 1920, 1921, 1922, and 1923, and each year deducted from the gross income of the estate the amounts so paid to them as fees and commissions for services rendered.

The respondent, upon audit of the returns for those years, determined that the estate was not entitled to deduct such fees and com-

missions so allowed the executor and executrix for such services in arriving at the estate's taxable income and disallowed the same as deductions. This action of the respondent gave rise to the deficiencies here involved.

The pertinent provisions of the statutes of Michigan are as follows:

SECTION 1. The probate court, at the time of granting letters testamentary, or letters of administration, shall make an order allowing to the executor or administrator, a time for disposing of the estate, and paying the debts and legacies of the deceased person, which time shall not, in the first instance, exceed one year and six months. (3 Comp. Laws, 1915, sec. 13883, p. 4863.)

The compensation of executors and administrators is also fixed by statute, 3 Comp. Laws, 1915, secs. 14117, 14118, p. 4935, as follows:

(14117) When no compensation shall be provided by the will, or the executor shall renounce all claim thereto, he shall be allowed all necessary expenses in the care, management and settlement of the estate, and commissions upon the amount of personal estate collected and accounted for by him, and of the proceeds of real estate sold under an order of the court for the payment of debts, as follows: For the first thousand dollars, at the rate of five per cent; for all above that sum and not exceeding five thousand dollars, at the rate of two and one-half per cent; and for all above five thousand dollars, at the rate of one per cent; and the same commissions shall be allowed to administrators, or such executor or administrator shall be entitled to receive one dollar for each day and fifty cents for each half day for the time necessarily employed by him in the care and management of the estate together with the actual and necessary disbursements therein.

(14118) In all cases where the executor or administrator shall perform any extraordinary services, not required of an executor or administrator in the common course of his duties, and in cases of unusual difficulty or responsibility, such further allowance may be made as the judge of probate shall deem just and reasonable; *Provided*, however, That such allowance shall only be made upon the filing of a petition therefor, setting forth in detail such extraordinary services, or the reasons for considering the case one of unusual difficulty or responsibility, and the order making any such allowance shall recite in detail the extraordinary services for which such allowance is made, giving the amount allowed for each item thereof, or the reasons for considering the case one of unusual difficulty or responsibility; and in case the order does not contain such recitals as herein required, the same shall be void and of no effect.

Sec. 13795, 3 Comp. Laws, 1915, p. 4834, provides:

If the testator shall make provision by his will, or designate the estate to be appropriated for the payment of his debts, the expenses of administration, or family expenses, they shall be paid according to the provisions of the will, and out of the estate thus appropriated, or so far as the same may be sufficient.

### OPINION.

TRAMMELL: It is the contention of the petitioners that the fees and commissions paid to the executor and executrix in the year involved are allowable deductions from the gross income of the estate. The respondent, on the other hand, contends that the commissions of the

executor and executrix are allowable deductions in determining the net estate subject to the estate tax and are not allowable deductions in determining the net income of the estate.

We agree with the respondent that ordinarily executor's fees and commissions should be applied against the gross estate in determining the net estate subject to the estate tax, and ordinarily they are not allowable as deductions in determining the net income of the estate. A distinction, however, should be drawn between administration expenses paid or incurred in settling up an estate and those expenses paid or incurred in preserving the estate over a period of years, making sales, collections and doing other things which were necessary in maintaining the properties and producing income. In the *Appeal of Estate of Seymour H. Knox*, 3 B. T. A. 143, a similar situation was presented. Knox left a large estate and instead of permitting his executors to receive the fees and commissions that would otherwise be paid to them under the laws of New York for their services, he made provision for the payment of fixed annual compensation. The services rendered by the executors consisted of managing and taking care of the estate and the income therefrom and there was paid to them during 1919 for their services for that year, $12,000 each, making a total of $24,000. In that case we said:

The only question presented by this appeal is whether or not the estate of Seymour H. Knox, in computing its net income for the year 1919, is entitled to deduct the amount of $24,000 paid to the executors of the estate as compensation for services rendered by them in that year. The Commissioner allowed as a deduction that part of the compensation so paid which bears to the total compensation the same ratio that the taxable net income of the estate bears to the total net income. However, at the hearing it was contended by the Commissioner that no part of the compensation paid to the executors of the estate in the year 1919 should have been or should be allowed as a deduction from gross income.

Seymour H. Knox, in his will, named certain persons who should act as executors in the necessary proceedings for the settlement and distribution of his estate, and provided further that the same executors should at once become the trustees of certain trusts specifically provided for and set forth in the will. The decedent, knowing that his estate would continue to produce a large income annually and that the execution of the trust provided for would extend over a period of years much longer than the period ordinarily required for the administration and settlement of an estate, provided in his will that his executors and trustees should, during the period of their service in such capacity, receive as compensation a fixed annual salary in lieu of statutory fees and commissions. He also provided that such salary should be paid out of the income of the estate.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Section 219 of the Revenue Act of 1918 laid upon the executors and trustees in this case the duty of making an income-tax return for the estate and properties under their charge, and it further provided that the gross and net income of such estate should be ascertained and computed in substantially the same manner as required of living persons. The executors and trustees are

essentially employees of the estate. Their compensation is one of the ordinary and necessary expenses of the estate and properly deductible from the income thereof without regard to the fact that a portion of the estate's income is exempt from taxation.

In our opinion expenses which were necessary to be paid out over a number of years in preserving the estate, selling the property and collecting interest or deferred payments on sales, are deductible from the gross income of the estate. Such expenses come under the classification of ordinary and necessary expenses in carrying on a trade ·or business. Under section 219 of the Revenue Act of 1918 an estate or trust is entitled to the same deductions for such expenses as are allowed to individuals.

Considering the will in its entirety, it was manifestly the intention of the testator that the expenses of preserving the estate, selling the timber and other expenses involved in collecting the gains and profits, were to be deducted from the income of the estate and not from the corpus. The intention of the testator in that regard, while not controlling as to whether the expenses should be deducted in determining the net income for the purposes of the tax, should be given great weight.

The testator knew that the property of the estate could not be sold immediately; she knew that it would take possibly several years to sell and dispose of the property and convert it into income-producing property. She also knew that her executor and executrix would have to render services in connection with the estate in order to protect it and derive income therefrom.

· Where it is known that an estate can not be settled and closed up within the ordinary period allowed for the administration thereof, and it is known that an indeterminable period of time will be required for that purpose, during which period the estate must be protected, property sold, income collected and expenses paid, it is our opinion, that such expenses should be deducted from gross income. Especially is this true where the amounts are paid out according to the will from income and are allowed by the probate court having jurisdiction.

In this case the amounts paid to the executor and executrix were compensation for services rendered in connection with the production of income. The executor and executrix were in a very substantial sense carrying on business for the estate and maintaining its property and were not merely winding up or settling the estate.

Under the facts in this case the fees and commissions paid the executor and executrix are, in our opinion, ordinary and necessary expenses of the estate· and are deductible in determining its net income.

*Judgment will be entered on 15 days' notice, under Rule 50.*